IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

POLK MEDICAL CENTER, INC.,

  Plaintiff,

    v.

BLUE CROSS AND BLUE SHIELD
OF GEORGIA, INC., et al.,

  Defendants.

CIVIL ACTION FILE
NO. 1:17-CV-3692-TWT

## OPINION AND ORDER

This is an ERISA action. It is before the Court on the Defendants' Motion to Dismiss [Doc. 6]. For the reasons set forth below, the Defendants' Motion to Dismiss [Doc. 6] is GRANTED.

## I. Background

The Plaintiff Polk Medical Center, Inc. is a critical access hospital located in Cedartown, Georgia.[1] It is a small rural hospital that delivers medical services to underserved areas.[2] It operates the only hospital emergency service in Cedartown.[3] The Defendants are Blue Cross and Blue Shield of Georgia, Inc., a for-profit health insurer, and Blue Cross Blue Shield Healthcare Plan of

---

[1]     Compl. ¶¶ 2, 21.

[2]     *Id.* ¶ 2.

[3]     *Id.* ¶ 21.

Georgia, Inc., a for-profit Health Maintenance Organization (collectively referred to as "Blue Cross").[4] Blue Cross is the plan administrator, claims administrator, or insurer for the health plans and insurance policies at issue in this lawsuit.[5] The Plaintiff has filed this action to recover payment of benefits allegedly owed under health insurance plans.

The Plaintiff is an out-of-network provider with regard to Blue Cross-administered plans.[6] This means that the Plaintiff does not have a specific contract with Blue Cross stating the terms and conditions for services provided to Blue Cross members.[7] However, Blue Cross members still have health benefits coverage for services that they chose to obtain from out-of-network health providers such as the Plaintiff, including coverage for out-of-network emergency services.[8] The Plaintiff operates the only hospital emergency room service in the Cedartown area, and is required by federal law to provide emergency services whether or not a patient has insurance or has an out-of-network insurance plan.[9] Thus, the Plaintiff provides medical services to Blue

---

[4] *Id.* ¶¶ 12-13.

[5] *Id.* ¶ 19.

[6] *Id.* ¶ 20.

[7] *Id.*

[8] *Id.*

[9] *Id.* ¶¶ 21-22.

Cross members, and submits claims for reimbursement to Blue Cross on behalf of the patients for the services provided.[10]

In an effort to obtain prompt payment, the Plaintiff requires its patients to assign their contractual rights to benefits and payments under their health plans to the Plaintiff.[11] According to the Plaintiff, this is standard practice in the healthcare industry.[12] The Plaintiff requires its patients to sign a written "Assignment of Benefits" form, as well as a written form authorizing the Plaintiff to act as the patient's "authorized agent and representative and to act on [the patient's] behalf as necessary to appeal any denial of payment or underpayment by any insurance company/health plan."[13] Blue Cross members at issue in this action agreed to assign their health insurance benefits under their ERISA plan or individual insurance policy to the Plaintiff.[14] According to the Plaintiff, Blue Cross received notice of the assignment of these claims.[15]

In 2012, the Plaintiff became an out-of-network provider with respect to Blue Cross.[16] From 2012 until 2015, Blue Cross generally honored the

---

[10]  *Id.* ¶¶ 21-23.

[11]  *Id.* ¶ 24.

[12]  *Id.*

[13]  *Id.* ¶¶ 26-27.

[14]  *Id.* ¶ 25.

[15]  *Id.* ¶ 30.

[16]  *Id.* ¶ 32.

assignment of benefits between the Plaintiff and Blue Cross members, with limited exceptions.[17] Thus, Blue Cross directly reimbursed the Plaintiff for medical services it provided to Blue Cross members.[18] For the past five years, the Plaintiff has sought to enter into an in-network agreement with Blue Cross.[19] The Plaintiff alleges that in the parties' negotiation of such an agreement, the Plaintiff has offered Blue Cross compensation rates that are well below the market rates established by other insurers that have contracted with the Plaintiff.[20] However, according to the Plaintiff, Blue Cross has refused these offers and insisted that the Plaintiff agree to "far-below-market rates and other oppressive terms."[21] The Plaintiff refused to accept these terms.[22]

Then, after the Plaintiff rejected these contract terms, Blue Cross refused to honor the majority of its members' assignments of benefits to the Plaintiff, despite doing so for a number of years.[23] The Plaintiff alleges that Blue Cross "illegally and unfairly" paid its members for the medical services the Plaintiff

---

[17] *Id.*

[18] *Id.*

[19] *Id.* ¶ 33.

[20] *Id.*

[21] *Id.* ¶ 34.

[22] *Id.* ¶ 35.

[23] *Id.* ¶ 36.

provided, in retaliation for the Plaintiff's rejection of Blue Cross's offer.[24] The Plaintiff alleges that most patients who have received these direct payments from Blue Cross have failed to transfer the payment to it, leaving the Plaintiff uncompensated for substantial sums of money.[25] The Plaintiff alleges that the patients are often confused, frustrated, unable, or unwilling to pay it for the services it provided to them when it attempts to collect payment.[26]

The Plaintiff also alleges that Blue Cross has issued refund demands to the Plaintiff for past payments made to it, sent notices to patients Blue Cross had already paid claiming it had overpaid them and demanding a refund, and consistently refused to pay, or underpaid, claims for services incurred by Blue Cross members at the Plaintiff's facility.[27] Overall, the Plaintiff alleges that the Plaintiff has billed Blue Cross for approximately $13.2 million since October 2015, and that Blue Cross has reduced its reimbursement by seventy percent.[28] The Plaintiff alleges that there are over $9.4 million in unpaid claims for which it has the right to receive payment under the assignment of benefits.[29] According to the Plaintiff, Blue Cross's conduct has forced it to bill patients directly, which

---

[24] *Id.* ¶ 37.

[25] *Id.* ¶ 38.

[26] *Id.* ¶ 39.

[27] *Id.* ¶¶ 40-42.

[28] *Id.* ¶¶ 44-45.

[29] *Id.* ¶ 47.

requires the Plaintiff to expend significant resources, and which often leaves the Plaintiff unsuccessful in obtaining this payment.[30] On September 21, 2017, the Plaintiff filed this action. In its Complaint, the Plaintiff asserts claims for ERISA benefits pursuant to 29 U.S.C. § 1132(a)(1)(b), breach of contract, quantum meruit, money had and received, and violation of the Affordable Care Act. Blue Cross now moves to dismiss.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[31] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[32] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[33] Generally,

---

[30] *Id.* ¶ 50.

[31] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); FED. R. CIV. P. 12(b)(6).

[32] *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).

[33] *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

notice pleading is all that is required for a valid complaint.[34] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.

### III. Discussion

Blue Cross first argues that this action should be dismissed because the Plaintiff has failed to sufficiently identify the ERISA plans and claims at issue. Blue Cross contends that the Plaintiff has failed to identify the health benefit plans at issue, and failed to identify the claims under those plans at issue.[35] Consequently, Blue Cross argues that it cannot effectively respond to the Complaint because it does not know which plans or claims are at issue, and cannot know what terms it has allegedly breached.[36] The Court agrees that the Plaintiff has failed to adequately plead these claims.

To sufficiently plead an ERISA claim, plaintiffs "must establish the existence of the ERISA plans under which they sue."[37] "A 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries,

---

[34] *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986).

[35] Defs.' Mot. to Dismiss, at 7.

[36] *Id.*

[37] *Sanctuary Surgical Ctr., Inc. v. Conn. Gen. Life Ins. Co.*, No. 11-80800-CV, 2012 WL 28263, at *3 (S.D. Fla. Jan. 5, 2012) (citing *Advanced Rehabilitation, LLC v. Unitedhealth Grp., Inc.*, No. 10-cv-00263, 2011 WL 995960, at *2 (D.N.J. Mar. 17, 2011)).

the source of financing, and procedures for receiving benefits."[38] Then, "[h]aving established the plan at issue, Plaintiffs must then identify the plan terms Defendants have breached."[39] "In doing so, Plaintiffs must be mindful of their obligation under Rules 8 and 10 of the Federal Rules of Civil Procedure to plead their claims discretely in counts such that dissimilar plan terms and patient conditions that present entirely different factual and legal questions are not improperly grouped together into a single count."[40] "The mere fact that Plaintiffs have yet to obtain the policies does not excuse them from this pleading obligation."[41]

For example, in *Sanctuary Surgical Centre, Inc. v. Connecticut General Life Insurance Co.*, the court concluded that the plaintiffs failed to sufficiently plead the existence of the ERISA plans under which they sued.[42] The court noted that the plaintiffs "fail[ed] to distinguish between the patients who were participants in an ERISA covered plan and those who were not—a crucial

---

[38] *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982); *see also Sanctuary Surgical Ctr.*, 2012 WL 28263, at *3 ("A plan is established if a reasonable person 'can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.'").

[39] *Sanctuary Surgical Ctr.*, 2012 WL 28263, at *3.

[40] *Id.*

[41] *Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. 11-806, 2013 WL 5519320, at *1 (E.D. La. Sept. 30, 2013) (quoting *Sanctuary Surgical Ctr.*, 2012 WL 28263, at *2).

[42] *Id.* at *1.

distinction."[43] The complaint there "group[ed] all Defendants together and contain[ed] no specific allegations against a given health insurance plan based on a given patient." Instead, the plaintiffs "simply made general allegations against all Defendants and attached a list of patients."[44]

Similarly, the Plaintiff's Complaint does not satisfy these pleading requirements. The Complaint, which only describes "employee welfare benefit plans" under ERISA and other plans "to which ERISA does not apply," fails to establish the ERISA plans under which it sues.[45] It does not provide surrounding circumstances at all from which a reasonable person could "ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits" under the plans at issue.[46] Instead, the Plaintiff merely provides a vague reference to ERISA and non-ERISA plans in general. It also fails to distinguish between patients who were covered by ERISA plans and the patients who were covered by non-ERISA plans, which is a "crucial distinction."[47] The Complaint has provided Blue Cross no notice as to what claims the Plaintiff is bringing suit under, what ERISA and non-ERISA

---

[43] *Id.*

[44] *Id.*

[45] Compl. ¶ 19.

[46] *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982).

[47] *Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. 11-806, 2013 WL 5519320, at *1 (E.D. La. Sept. 30, 2013).

plans cover those claims, or how the Defendants have breached the terms of those plans. The Complaint provides almost no information at all detailing the claims and health plans at issue. This does not provide Blue Cross with the type of notice that allows it to respond to the allegations of the Complaint. Therefore, the Plaintiff fails to satisfy the pleading requirements for ERISA claims.[48]

The Plaintiff responds that it has adequately described the plans at issue in this case, and that requiring a plan-by-plan analysis would undermine judicial economy.[49] The Plaintiff cites multiple cases for this proposition, and argues that a complaint need only generally describe plans consisting of ERISA plans and non-ERISA plans.[50] However, in each of the cases cited by the Plaintiff, the complaint provides a specific number of ERISA and non-ERISA claims under which the plaintiffs sue, and also provides a list attached to the complaint providing details of these claims. Thus, the defendants in those cases could ascertain the plans and claims at issue. In contrast, the Complaint in this action only references ERISA and non-ERISA plans generally, with no other identifying information that allows the Defendants to identify any of the claims, plans, and terms of those plans underlying the Plaintiff's allegations.

---

[48] *Sanctuary Surgical Ctr., Inc. v. Conn. Gen. Life Ins. Co.*, No. 11-80800-CV, 2012 WL 28263, at *3 (S.D. Fla. Jan. 5, 2012).

[49] Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 5-6.

[50] *Id.*

For example, the Plaintiff relies upon *Productive MD, LLC v. Aetna Health, Inc.*[51] In *Productive MD*, the court noted that "[i]n the interest of judicial economy, the court ordered the parties to brief several threshold legal issues, none of which would require the court to conduct a plan-by-plan analysis of the numerous underlying insurance plans."[52] However, in that case, the plaintiff alleged in the complaint that there were 167 claims at issue, including 160 plans governed by ERISA, one plan governed by Medicare, and six plans governed by state law.[53] Furthermore, the plaintiff in that case attached numerous exhibits to its complaint detailing the claims under which it sued, including the patient identification numbers, plan names, date of services, and more.[54] In contrast, the Plaintiff here only generally describes ERISA and non-ERISA plans, without more, in the Complaint.

The Plaintiff also cites *Elite Center for Minimally Invasive Surgery, LLC v. Health Care Service Corporation*. There, the court stated that requiring the plaintiff "to plead the specific terms of every plan governing all 1,159 ERISA claims would produce an enormous and unwieldy complaint, far exceeding the

---

[51] *Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901 (M.D. Tenn. 2013).

[52] *Id.* at 912.

[53] *Id.* at 911.

[54] *See* Second Am. Compl. [Doc. 98], *Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901 (M.D. Tenn. 2013), under No. 3:12-cv-00052.

plausibility standards imposed by *Twombly*."[55] However, in that case, the plaintiff alleged that the defendant denied or underpaid 1,159 ERISA claims, and attached an exhibit to the complaint providing "the date of submission, insurance and group identification numbers, charges, and payments for each claim submitted to [the defendant]."[56] Thus, even if the Plaintiff may not be required to plead the specific terms of every plan governing the ERISA claims at issue, it still must provide enough information so that the Defendants can ascertain the ERISA plan, fund, or program from the surrounding circumstances. The Plaintiff fails to do this.

Unlike the complaint in *Elite Center*, where the plaintiff attached a table detailing the information for each of the 1,159 claims, and the complaint in *Productive MD*, where the plaintiff attached numerous exhibits filled with information concerning the claims, the Plaintiff here only generally describes "employee welfare benefit plans" under ERISA and "one or more . . . individual insurance policies or church plans to which ERISA does not apply."[57] This

---

[55] *Elite Ctr. for Minimally Invasive Surgery, LLC v. Health Care Serv. Corp.*, 221 F. Supp. 3d 853, 857 (S.D. Tex. 2016).

[56] *Id.*; *see also* Exhibit A, Second Am. Compl. [Doc. 48-1], *Elite Ctr. for Minimally Invasive Surgery, LLC v. Health Care Serv. Corp.*, 221 F. Supp. 3d 853 (S.D. Tex. 2016), under No. 4:15-CV-00954. The plaintiffs in each of the cases cited above also attached similar exhibits providing the claim information to their complaint.

[57] Compl. ¶ 19; *see also* Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 6 ("Here, the Complaint adequately describes the plans as consisting of both ERISA plans and individual policies or church plans that [Blue Cross] members

information does not allow a reasonable person to ascertain "the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits" of an alleged ERISA plan.[58] The Complaint, which merely alleges the existence of ERISA claims in general, fails to put Blue Cross on notice of the claims that the Plaintiff bases its allegations upon. Therefore, the Court grants the Defendants' Motion to Dismiss, and will allow the Plaintiff to file an Amended Complaint adequately identifying the underlying ERISA plans and distinguishing between ERISA and non-ERISA plans.[59] The Court declines to exercise supplementary jurisdiction of the Plaintiff's state law claims in the absence of a viable federal claim.

## IV. Conclusion

For the reasons stated above, the Defendants' Motion to Dismiss [Doc. 6] is GRANTED. The Complaint is dismissed without prejudice, and the Plaintiff is ordered to amend the Complaint to adequately plead its ERISA claims.

---

utilized when seeking medical treatment at Polk.").

[58] *See Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982).

[59] *Sanctuary Surgical Ctr.*, 2012 WL 28263, at *3. The Court finds it unnecessary to address the remainder of the Defendants' arguments until the Plaintiff files an Amended Complaint that adequately identifies the ERISA plans at issue and distinguishes between patients who were participants in ERISA and non-ERISA plans. *Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. 11-806, 2013 WL 5519320, at *1 (E.D. La. Sept. 30, 2013).

SO ORDERED, this 29 day of January, 2018.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge